The second case on the document is 2-18-0053, people of the state of Illinois, and the plaintiff's name is Grambling D'Amini, defendants at the lead. I'm here on behalf of the plaintiff's appellant, Mr. Steven J. Lupa. I'm here on behalf of the defendants at the lead, Mr. Steven L. Walker. Mr. Lupa, you may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Counsel. My name is Steven Lupa, and I'm an assistant state's attorney in DuPage County, and I'm here today on behalf of the people of the state of Illinois. Your Honors, in granting the defendant's motion to quash and suppress, the trial court decided several issues correctly. It decided that police officers had authority to stop the defendant's vehicle. It decided that the officers lawfully ordered the defendant out of his vehicle. And it decided that the officers properly secured the defendant in handcuffs for their safety. And we agree with all of those points. But the trial court went astray when it suppressed the evidence, the gun, based on the officers' description of their actions as an arrest. So, Lupa, let me ask you a special question I've been wondering about. Yes, Your Honor. The state seemed to go all in on the theory that the seizure was based upon a lawful arrest and the gun was discovered incident to a lawful arrest, correct? Yes, Your Honor. That was the crux of the state argument below, which was probable cause. And in this court, on the briefs, you've persisted in that argument, right? So you're all in on the theory that there was a valid arrest and the gun was discovered incident to the arrest. I'm all in on the theory that if we do determine that this was an arrest, there was, if we do get to that point, there was probable cause to support that arrest based on the totality of the circumstances. You say if we get to that point. Well, you didn't advance the theory that I'm seeing here anywhere that there was a valid investigatory stop and maybe the gun was seized pursuant to a protective sweep. But as I understand it, I mean, and I guess I'm going to ask you a pointed question. Sure. Have you forfeited any argument that the seizure was anything less than a seizure incident to a valid arrest? Well, Your Honor, I don't think – I agree that we are raising additional points in our brief here on appeal that were not argued by the trial attorneys below. So does that forfeit the argument? I don't think it necessarily does judge. The waiver doctrine and forfeiture is a constraint on the parties. It's not a constraint on the court. In other words, it's not a jurisdictional limitation. And courts can and often do look past waiver and look past forfeiture to correct injustices below, to correct incorrect decisions below. And the purpose of waiver, the purpose of forfeiture is judicial economy. And here we are. This was a pretrial motion to suppress. There were two witnesses that were called. It lasted a few hours, if that. I don't think it's clear from the transcripts. However, significant resources have not been utilized where if the case did get reversed and remanded, I don't think – based on judicial economy, I don't think the purpose of the waiver doctrine comes into play. I don't want you to spend all your time on this. So you're saying that we could announce a rule or a theory to uphold the search and seizure that was never argued below. Is that what you're telling us we could do? Yes, I am, Your Honor. Again, waiver is not a constraint on the court. Courts often do reach issues that were not decided below to correct errors that were made. And branching out from that point, I would also note that the exclusionary rule was at issue below. The defense was asking the court to apply the exclusionary rule. The entire application of the rule is at issue. The trial court certainly knows its purpose, and it did not apply the exclusionary rule correctly here. Just to clarify, one final question. Certainly. There's nothing that would have prevented you from arguing alternative theories. Is that correct?  Yes. Correct, Your Honor. Let's focus on probable cause. Certainly. Since you indicated we've talked about what your main theory and argument is. Absolutely. And it has to do with an arrest. So let's talk about whether there was probable cause for an arrest. First, focusing on the 911 call or caller, was this an anonymous tip or a known informant? It was not an anonymous tip, Justice Sienoff. Okay. I think that the cases that I cited, Ewing and McGee, make clear that an emergency call to police should not be viewed as an anonymous tip. That is direct language pulled from both of those cases. It should not be viewed with the same skepticism that is applied to tips by confidential informants. Well, so what facts in addition to the caller's 911 call? And can we assume that that caller identified himself or herself as part of the 911 call? Well, I think the evidence that came in at the suppression hearing was that the 911 caller did later identify themselves. Certainly, however, we're looking at the officer's point of view when they made the arrest. I don't think that they knew the caller's name at the point that they made the arrest. But what facts in addition, though, supported the finding that this 911 caller may have been reliable? Well, Your Honor, first and foremost, the 911 caller provided a number of highly specific details. The caller provided the when, provided an approximate location, provided the color of the vehicle. Not just the color, the make of the vehicle, the model of the vehicle. Why are you only saying one vehicle? I'm sorry? It's a vehicle, I call it. Yes, Your Honor. Justice McClaren provided the color of the vehicles, the make of the vehicles, the model of the vehicles. And not just that, but the caller provided the sequence of the vehicles. Now, when you think of all the different types of cars, all the different models, makes, colors out there, there are hundreds and thousands of different permutations of sequences that these vehicles could have been in. That the odds of a white car followed by a… Billions and billions. Billions and billions. The odds of these exact three vehicles following each other in this exact sequence are astronomical. It even goes beyond that. This is something we don't usually see. The caller provided information and continued to provide information as to where he was going, where the defendant's vehicle was going, the basis of knowledge was provided, and it gave the police the opportunity to independently corroborate and verify his information. Exactly, Justice. Somebody comes up, hey, there's a guy in a car with a gun. He's saying, I'm driving around, come and find me, and they can corroborate and verify his information. Exactly, which brings me to my next point. That is exactly what Deputy Chief McLean did. Relying on these highly specific details, he found the vehicles, he testified it's a residential area, there's not a lot of through traffic there, it's noon, it's not rush hour, and he finds these exact three vehicles in the exact sequence that the caller specified. But he doesn't pull the vehicles over there. He doesn't say, okay, well, I found my car, this must be what I'm looking for. No, he stops, he follows them, he continues to make observations, he continues to receive details from dispatch about where these cars are, he observes that the vehicles are making turns in tandem, abruptly, very quickly. The Camry even blows a stop sign in order to keep on pace with the two vehicles in front of it. I think that's significant. Each one of these details independently might not be enough to support probable cause, but when you consider everything together, and in addition, the driver of the Range Rover at one point, at a stoplight, opened his vehicle for up to eight seconds. Opened the door of his vehicle. I'm sorry, what did I say? You said opened his vehicle. Opened the door of his vehicle, yes. I don't know what that means. I apologize. Yes, he opened the door of his vehicle. And again, that act of opening the door by itself might not be enough, but when you consider everything that Deputy Chief McLaren learned, and the fact that he I'm Deputy Chief McLaren. I think it's McLean. I'm sorry. Justice McLaren, thank you. Is this enough for probable cause? Absolutely. Is all of this enough for probable cause? Absolutely it is. All right. If we look at, then, if there was probable cause for this arrest, why were the officers then justified in searching the passenger compartment of the vehicle for firearms? Well, Justice Vinoff, it wasn't a search. It was a plain view observation into the back seat. And I think courts have made clear that a plain view observation is not a search because an individual does not have a legitimate expectation of privacy in objects that he leaves open in plain view for anybody to see. So I would submit that it's not a search. We all agree on that. Could this have been a search incident to arrest? Did they not know from the caller that there was a gun pointed at the victim in the white car? I think it could be classified as that. It is a little bit more tenuous because we do have evidence that the defendant was placed in the back seat of the car at that point. However, as you said, we have a report of a gun. We don't know where the gun is at this point. And in addition, there's a Toyota Camry who still, as far as the officers on the scene knew, was still at large. So was there reason to believe then? Did the officers have reason to believe a crime had been committed? Absolutely they did, Your Honor. Okay. And I think we all agree that the vehicle was lawfully stopped. Defense counsel notes it at page 7 of their responsive brief. This was a valid stop. The defense has conceded this was a valid investigatory stop? Judge, I believe at page 7 of their brief. If I could have just a moment. Based on the scant information available, McLean could at most conduct an investigatory stop based on reasonable suspicion. But that's far from conceding it, though, right? You've got to be careful. They didn't concede it was a valid investigatory stop. They said if it was at most. But I don't think they conceded it. But move on. Could you articulate what, if anything, Judge McAllis related regarding the lack of probable cause? In other words, what was his rationale for determining that there was no probable cause? His rationale was that the officers immediately arrested the person that they believed was responsible without doing any sort of follow-up investigation. For example, I think he believed speaking with the alleged victim and corroborating the further corroborating the details of the 911 call. I think he said, as an example, they could have went and spoken to the victim and just confirmed that the victim wasn't making it up or wasn't telling a lie. But I would submit that the officers didn't need to do that based on the victim's status as a 911 caller. Again, it should not be viewed with the same skepticism as an anonymous tip from a confidential informant. So I think we have that issue of reliability there. Let me ask you this. Go ahead. You had mentioned earlier that the officers saw the gun in plain view before they entered the vehicle to actually take it or look for it. Yes. The record supports that. Do you recall who the officer was who testified about that? Yes. It was Officer Valdez. And I can point you to the appropriate spot here. It was Officer Valdez that testified to that. And I believe it was at page – I can get the page number for you on the bottle, Your Honor. Okay. You can testify unequivocally that the gun was visible from outside the vehicle. Correct. That it was visible outside the vehicle and that he did not have to open – the gun was found before any of the doors were open. He did testify to that. So that no items or objects had to be manipulated to reach the point of the observation. It was straight in the window. And it was at noon. It's the middle of the day. I think a reasonable inference was that it's daylight outside if this is at 1230. So I think that – Let me ask you this. Yes. And we can argue about probable cause for an arrest and for the search. In the context of an automobile stop, would the police have a reasonable articulable suspicion the occupant may be armed and dangerous? Do they have the right to conduct a protective search of the car for their own safety, even if the defendant is not under arrest? Can you – I'm sorry. Can you repeat that one more time? In the context of an automobile stop, the police have a reasonable articulable suspicion to support an investigatory stop. Can't – and they believe there's evidence that the occupant may be armed and dangerous. Can't they do a protective sweep of the car or search? Yes, absolutely. And I think Terry v. Ohio supports that. Well, but do they – Michigan v. Long. It's Michigan v. Long, I think. But does – would that still apply if the defendant were handcuffed in the back of a squad car while they did that search of the passenger – of the vehicle? At that point, again, I think it is a little more tenuous to get to that point when he's handcuffed and in the back of a squad car and he is effectively neutralized at that point. However, I would also note that there's a second suspect vehicle involved here, a Toyota Camry, and the officers who are on the scene with the Range Rover, they don't know where that driver is. They don't know what's going on with him at that point. So I would argue that still at that point there is a reasonable threat to officer safety that this other guy could show up, maybe grab a gun where the officers don't know where it's located from the vehicle if these two people are truly acting in tandem. Well, but there were quite a few officers there at that point, weren't there? Yes. I mean, there weren't just two officers there. It sounded like there were at least three, four, five officers who were there at the time. That's true, Your Honor. And viewing it through the officers' eyes at the time when this occurred, though, this was a highly volatile situation involving a man with a gun who was not complying with their orders. And I think based on the situation before the officers, certainly their actions in this case were reasonable and supported by a probable cause. We'll have an opportunity to take your vote on that. Thank you. Thank you, Justice McClaren. Mr. Walker, you may proceed. Your Honor, counsel, may I please go on? My name is Stephen Walker, and I represent the defendant, Abelie Brambling-Downey. You have to keep your voice up there. It's a big room with high ceilings, so everybody needs to hear. Adjust the microphone a little bit since you're taller. That's great. Is that better? Yes. Okay. Just speak louder, please. Your Honor, like the State, we agree that the trial court made several proper findings. In fact, we believe that all the trial court's findings were correct. In this case, the officers received a dispatch call that was received via 911 from someone who failed to identify themselves and failed to give any other details other than that they were being followed by a Range Rover and a black sedan. He said that he thought a gun was pointed at him, but he didn't provide any details about what the gun looked like or anything to that effect. So when McLean began his investigation, all he had was that scant information. And in following these vehicles, yes, he did see them following the cars in tandem, but he also did not observe any traffic violations. He observed my client stop at all the stop signs, stop at all the stop lights, and make proper turns. It's important to note that this stop was only conducted after the cars had diverged. The white car went in one direction, the sedan pulled into an automobile repair shop, and then my client continued on for approximately three blocks before the officer pulled him over. When he was pulled over, Dominique was ordered out of the car, and the officer testified that it appeared that he had a hearing impairment. But now, let's go back a step. You don't contest that there wasn't reasonable suspicion to pull him over, though. You agree there was, is that right? Your Honors, under these facts, we would concede that, yes, there was reasonable suspicion to conduct an investigation. But the officers went further than that in this case. They, by their own admission, Officer Valdez and Deputy Chief McLean, testified that they arrested Dominique as soon as he got out of the car, and they tackled him and placed him in handcuffs. They performed a pat-down search and found no weapons on his person. Dominique was away from his car at this time. He had gone over to the other side of the street to sit on the curb, and these officers were armed. There were four armed officers there. They then took Dominique, after this pat-down search, and put him in the back of a squad car. Now, under Gant, once the defendants in the squad car, unless his gun was found in plain view, and I'll get to that briefly, the officers were required to get a warrant to search the car. Instead, while Officer Valdez and another officer were placing the defendant in the back of the squad car, other officers had already begun opening the doors and searching the vehicle. Let me stop you there on your interpretation of Gant. I think Gant arguably would stand for the proposition that there wouldn't be authorized to search when the arrestee is secured. However, doesn't Gant, in subsequent Illinois cases, allow for reasonable belief the evidence relevant to the crime might be in the vehicle? Do they need to get a warrant to look into the vehicle? And if the gun is sitting in plain view, how would Arizona v. Gant prohibit them seizing the gun? I'll address the plain view argument first. In this case, the record doesn't support the contention that the gun was absolutely found in plain view. There are definitely still discrepancies there based on Officer Valdez's testimony. Officer Valdez testified that he and other officers found the gun in plain view. Deputy Chief McLean's testimony indicates that other officers found the gun. And at that time, the doors were already open. Didn't Valdez say he saw the gun in plain view? I mean, found is a term that could be ambiguous. Didn't Valdez testify he saw a gun in plain view? Yes. That's what he testified to, but he was subsequently impeached by his own report where he failed to mention finding that gun in plain view. What's Officer Trevor Fett to decide? Normally impeachment would be if he wrote in his report that the gun was underneath the seat. Your Honor. If that's an impeachment. Right, to be an impeachment. I would contend that he had a duty to include these details in his report. If he was going to claim it was in plain view. It doesn't corroborate it, but it doesn't impeach it. Okay. You talk about the doors being open or the doors being closed. If it's in a position where it could be seen with the door closed, what is material about opening a door? Your Honor, unfortunately the state failed to develop a record in this case that would allow us to speculate as to this, and they forfeited it by failing to even raise it at their motion to reconsider. That was the question I asked him, the threshold question I asked, and he had a plausible argument in saying forfeiture is a limitation on the parties. It's not a limitation on the court. How do you respond to that argument? Your Honor, of course you may consider arguments put forth at this stage, but given the fact that defense counsel was not allowed to make a record below and the state didn't make a record below, it would be prejudicial to my client to simply decide based on speculation that this gun was found in plain view. And as I said, officers had already begun searching the car after, this is what the officers testified to, they had placed Dominique under arrest and secured him in the back of a squad car. Well, so if there was probable cause to arrest the defendant, why wouldn't the officers have been justified in searching the passenger compartment for the weapon? Your Honor, I don't believe that the officers had probable cause at this point. I would concede that they had reasonable suspicion, but there is a significant distinction between reasonable suspicion and probable cause. If we were to extend these circumstances and want them under probable cause, then we'd start opening the door to removing the necessity of having a magistrate or anything where officers had a gut feeling that something's off. Deputy Chief McLean testified that he didn't observe anything unlawful, but he observed things that were suspicious to him, that these cars were following each other in tandem, and that my client opened his door for seven or eight seconds. And we have the 911 caller, presumably reliable, who testified that there was a gun pointed at him. So the officers knew that information also, correct? Well, the trial court made the factual finding that we couldn't simply presume that this call was a liability, and I think the trial court was correct in stating that people can call 911 for various reasons. Now, that's not to diminish the fact that a 911 call should be elevated above an unknown informant. But at the same time, 911 calls are prone to abuse. There was some indication in the record that there may have been a dispute at the courthouse and that there was something going on between the parties. Maybe this caller had impetus to lie. We don't know. Well, let's take a step back. Again, we're all in on this incident to an arrest, and the State got the chain going, and that was the argument they made below, and that's the argument they're making in the briefs. But you tacitly conceded that there would probably be enough for an investigatory stop. So let's forget about probable cause. The police get the call. They arrive. They follow the vehicles. They've got, you know, eyes on the vehicles. They've got ongoing corroboration of the caller, okay? He didn't just make this up because they see the vehicles, the model, they're following him. So they have the right to pull the vehicle over when there's a report of a weapon. So he stopped. He's taken out of the vehicle pursuant to an investigatory stop, okay? Nothing going on there but an investigatory stop. The officers can't look into the window of the vehicle they just stopped, and if they see a gun in plain view, how does the validity of the seizure of the weapon depend on probable cause at all? Do they need probable cause to look into a vehicle? Your Honor, this assumes that the gun was actually in plain view. Right. But let's assume that it was and the fact finder believes it was in plain view. So my question is do you need probable cause to look into a vehicle that you've just stopped? I think the answer is probably no. Correct. The answer would be no to that question. But, again, plain view is not argued for law. We don't have sufficient evidence in order to make that determination above. Mainly because the state did not develop a record in this regard. So it is my contention that after Dominique was pulled over and unlawfully arrested and then placed in the back of the squad car, any subsequent search, if there was a subsequent search, Deputy Chief McLean testified that two other officers had already begun opening the trunk opening the doors and searching the vehicle, that he can't just assume this gun was in plain view. Valdez was placing the defendant in the back of the squad car when the doors were being opened. Was there only Valdez who testified where the gun was located? Deputy Chief McLean could not testify as to whether the gun was found in plain view. He did indicate that a gun was found in the back passenger seat pool. So you're saying the police, in essence, at the end of the day, your argument is the police obviously jumped to an arrest when they didn't have a valid basis for the arrest. Correct. If under, as Your Honor has indicated, Michigan v. Long, they conducted a search because they believed he had a gun without arresting Dominique, the facts would be different. But the facts as they are now is that Dominique was unlawfully arrested. Again, he was tackled, handcuffed, patted down and placed in the back of the squad car. And then the officers proceeded to search his automobile. Well, are you saying it was police misconduct here? I mean, that has not been part of the record that I brought. Your Honor, I'm not saying that there was police misconduct, but I am saying that the police misunderstood the process by which they should go about conducting their investigation. Instead of, again, confirming their reasonable suspicion and then placing my client under arrest, they simply arrested him and then conducted a search. So why did it matter more what the officers said, that is that he was placed under arrest when they were asked in the hearing below, versus what they did for purposes of the Fourth Amendment and the exclusionary rule? Your Honor, in this case… I mean, wasn't the trial court here using the exclusionary rule really to penalize the police for some misconduct that did not occur? Your Honor, does that allow me to say that? Yes, there was police misconduct here to the extent that the officers did not follow the law. They did not follow appropriate protocol in addressing this issue. Instead of confirming their reasonable suspicions with an investigation, they jumped straight to arrest. And the exclusionary rules apply when police engage in conduct that needs to be deterred. And what should they have done that they didn't do? What step was omitted? I mean, we've talked about today all of the facts that were corroborated by the police based on the information they got from the 911 call and then their own independent investigation. So what is the step that was omitted? Your Honor, again, they could have handcuffed Dominique for reasons of officer safety, and they could have looked into the vehicle prior to arrest to see if a firearm was in there. Right. What they did was arrest Dominique and then search the vehicle. Well, when you said they – that is, they uttered the words, you're under arrest, or they testified they placed him under arrest, but what actually happened in terms of events was the same thing. Correct? I disagree. I mean, if you handcuff somebody, Justice Hudson was just asking questions about that with respect to the investigatory step. Certainly the police can handcuff someone for their own personal safety. Your Honor, yes, I would definitely concede that. But the police went beyond that in this case. They not only handcuffed him. First, they tackled him to the ground. Then, after performing a pat-down search, they placed him in the back of an automobile on top of testifying that they arrested him. Let's not get too far afield on that. I don't want to interrupt you. But it seems to me evidence to be suppressed under Supreme Court decisions must have been obtained as a result of some illegal police activity. In other words, there must be a causal connection between the illegal police activity and the disputed evidence. So how did the illegal arrest here, to ask you a pointed question, result in the discovery of the handgun? If it's an investigatory step, okay, they have the right to look into the vehicle. If it's in plain view, if they had to search the whole car and go under the seat, I would agree with you, the evidence would have been obtained as a result of an illegal search. If you stop a car, okay, and you look into the vehicle and you see it, how is the evidence obtained as a result of an illegal search? Your Honor, I don't think that question is before the court, respectfully. But it would be a harder question for you if it was before the court, wouldn't it? Of course, yes, I would concede that. But unfortunately, it's not. What we have here is an underdeveloped record that does not allow any of the parties or the court to speculate. Your time is up. Thank you. Thank you.  Thank you, Your Honor. Thank you. Just a few points in rebuttal. First, I promised I'd follow up with the page number from the record regarding the plain view testimony. It's page 103 and 104. Officer Valdez testifies, we saw the handgun in plain view before opening any of the doors or anything. It was in plain view on the rear passenger floorboard of the vehicle. Certainly, I understand counsel saying, well, it doesn't appear in the report anywhere. But as Justice McClaren said, that may not corroborate the officer's testimony, but it certainly doesn't contradict the officer's testimony. So the only testimony that we have in the record is that this was a plain view observation. And I think that goes toward the waiver argument, too. This was part of the record. The officer did testify that he observed the gun in plain view so while the trial attorney did not argue that below. The trial court had the testimony before it. It was part of the record. It had the opportunity to address that. So it would certainly be another reason, in addition to what I just mentioned, to get past the waiver doctrine. The next point I wanted to talk about was counsel mentioned that 911 calls are prone to abuse. So we essentially really should treat a 911 call with skepticism. But that's not what Ewing and McKee hold. There are certain indicia of reliability there. And I would argue that it's akin to the hearsay exceptions. So hearsay exceptions come in because there is a certain indicia of reliability. And that's why we have excited utterance exceptions, and in federal court they have present sense impression. It's because it's a statement made contemporaneously with events that are occurring under which the declarant does not have an opportunity to fabricate. And that's what we have here. We have it's a 911 call. He's giving simultaneous contemporaneous details with what's happening. And based on Ewing and McKee, there's no reason to treat this as a call from a confidential or unknown informant. But his point was that the police did not speak to the caller before arresting the defendant and seizing the gun. The key fact here was that a gun was pointed, that the 911 caller said that the occupant of the Range Rover pointed a gun at him. So counsel's point is people can lie. They have other motives. So that the police really weren't following protocol or weren't doing what they should have done by not speaking with the caller before they arrested the defendant. And I think my response to that, Justice Zinoff, would be just with the reasonable doubt standard where there is clear case law that says that you don't have to prove out all theories consistent with innocence. Just as with probable cause, it's just a fair probability. The officer certainly didn't have to go and rule out every possible explanation that maybe this caller was lying based on the low threshold of a fair probability. I think it's there. And finally, that takes me into, I would be remiss if I didn't talk about Draper because I cited in my brief, I think it's a strong case. Admittedly, it's an old case, but it doesn't make it any less compelling or persuasive. In that case, it's a drug case. And the officers receive info from a confidential informant. They receive a location. They receive a date. They receive a general description. Okay, this guy's going to be wearing this type of clothing and he's going to have a tan zipper bag. And the police found the man matching that description and arrested him. They didn't go up to that man and say, Are you carrying heroin? They didn't double-check with the confidential informant once they found the guy and say, Are you sure this is the guy who you said has the heroin? No, they arrested him right away and the United States Supreme Court held that that was okay. That although the officers did not personally see the heroin before the arrest, they confirmed every detail from the confidential informant except for the heroin. And that's what we have here. And the only distinction that counsel draws in his response brief is that it was a known informant in Draper and it's a 911 caller here. But as I replied in my brief, certainly one factor can compensate for another under Gates. So I don't think it's a meaningful distinction. I think it is on point with our case when the officers corroborate every single highly specific detail other than the fact of the gun itself. I think similar to Draper, they did have probable cause here. Your Honors, unless there are any further questions. You didn't ask for oral argument. Could you tell me why? Because you knew we would do the right thing. Yes, Your Honor. That's a good answer to confirm his observation. We think so. So for that reason, we would ask you to, in your words, do the right thing and reverse the judgment pullout and remain for further proceedings. Thank you. Thank you. There's another case on the call. There will be a short recess.